Good morning. May it please the court. My name is Romeo R. Perez, and I will represent the petitioners in this case. Basically, there are four issues before you. First is whether or not the assault and battery and other intentional conduct are preempted by the Labor Management Relations Act. Second is whether the summary judgment by the district court was proper. Whether the Labor Management Relations Act applies at all in this case, and whether the court's decision to deny plaintiffs' motion to amend to conform with the evidence was proper. Focusing on the assault and battery, Nevada law defines assault and battery as a crime, and the conduct must be looked at in order to contract their rights away from being a victim of a crime. In this case, the defendants want you to believe that the law provides that a person must address criminal acts as part of a mediation or an arbitration. The Labor Management Relations Act in Section 185 does not grant parties to a collective bargaining agreement the ability to contract for what is illegal under state law. It's your argument primarily Galvez, the Galvez case, which has to do with essentially tortious conduct. It happens to be a union shop, but you're not talking about violation of the CBA. You're talking about conduct that occurred. Talking about conduct, yes, sir, and the reasonableness of that conduct, because certainly we believe that in this case it was unreasonable, the conduct perpetrated by the employer. All right, but it's a separate tort. It's not bound up in the CBA. That is correct, Your Honor. It's a tort under state law, right? That is correct, Your Honor, not a Federal tort. No, sir. Why shouldn't this case be in State court? That's a good question. It was removed by the defendant in this case and was placed in front of Judge Pro. And we argued for the remand, but because the district court agreed that these were preempted by the Labor Management Relations Act, which we disagree with, it stayed in Federal district court. What's your best case for a remand? Your Honor, certainly we believe that these actions, the conduct of the employer was so egregious, rose to the level of criminal act, which could not be given away through the negotiations. You're not making a criminal charge here. You're bringing a tort claim under state law. That is correct. And so answer Judge Veser's question. What's your best case? I'm sorry. I don't understand the question. His question to you was what is your best case on your side? As far as a remand. Get it back to State court where it belongs. We believe that these are not, the facts of the case do not arise to. No, I think he's asking you, can you point to a particular decision out of our court, let's say, that helps your. Or the Supreme Court. Or the Supreme Court that helps your case. Well, certainly, Your Honor, the Labor Management Relations Act itself. Case. Case. Well, you've got Galvez. Anything beyond Galvez? Under Romero v. Hilton Hotels, that defines assault and battery. The Romero v. Hilton Hotels talks about the elements of harmful offensive conduct, says that it's defined by the CBA. However, in this case, the issues are that the conduct was so egregious that it rises to the level that is outside of the CBA. And we believe that Romero does not apply. Counsel, then you wouldn't, you don't have to get into the preemptive exhaustion and some of the other issues in that case. Anything further on the merits? Simply, Your Honor, that we ask that the Labor Management Relations Act does not apply, as well as part of the summary judgment was that the Nevada Industrial Accident Board remedies were not exhausted. That does not apply because this was intentional conduct by the employer. Okay. Now, what about our order to show cause? Have you had a chance to read it and to respond to it? I have, Your Honor. We did file an amended petition, and I apologize for the ---- But you did. Did you respond to the OSC? I did see another blue brief. Yes, Your Honor. But I didn't see any response to the OSC. Did I miss something? I believe that our response was the amended brief. Oh, I see. So you concede the problem. I do, Your Honor. I apologize. This is my first time in front of the Court. Okay. Did you cite the Galvez case in your brief? No, Your Honor. I don't see it. No, Your Honor. Are you familiar with the Galvez case? Barely. What does barely mean? I don't think you are. No. No. Well, you see, you don't have to hedge. If you haven't read it, just tell us. You haven't read it? No, sir. Okay. The red brief doesn't seem to cite it either. Sorry, Your Honor. I guess nobody wants anybody to know anything about the Galvez case, but we know about it, so that's fine. Okay. All right. Thank you, counsel. Let's hear from the other side. Thank you, Your Honor. May it please the Court. Cam Ferenbach on behalf of Circus Circus Casinos, Inc. Your Honor, before I go to the merits, I think maybe I should address the remand issue that was just brought up. That would be helpful. With your permission. Thank you. The general rule on remand, generally a cause of action under Federal law, can rise only when the plaintiff's well-pleaded complaint raises an issue of Federal law. That would be under the Metropolitan Life case. And we did not have that situation in State court. There was no issue of Federal law pled by the plaintiffs in State court. However, there is the complete preemption doctrine, which applies when there's an issue of 301 preemption. I noticed Judge Proh's ruling was very peremptory and not very much analysis. And the more I probed into it, the more I was convinced that I think he's wrong on it. This is a pure State tort that has nothing to do with the CBA. Well, Your Honor, I'd like to address that issue in a minute. But focusing on the remand issue first. Well, I guess you're wiser to answer Judge O'Scanlon's question. I'm sorry. Okay, Your Honor. I'll be happy to jump in. Can I just first just say I don't believe there was any appeal of the remand. I don't think there's any challenge that there's jurisdiction. When a judge asks you a question, you're really smart to answer it. I apologize. If I can reserve that issue, though, I'd like to go back to it. Okay. On May 3rd, 2002, there was a scuffle between the room attendants and the security guards at the employee dining room at Circus Circus Las Vegas. Those facts are undisputed. There was a scuffle between those two groups. The guards were directing the employees to leave the employee dining room and trying to detain a union steward who was addressing a gathering of approximately 200 employees. There's no dispute on those facts. All claims, and the court below ruled that all claims arising from these facts were preempted by Section 301 of the Labor Management Relations Act. What was the alleged wrongful conduct here? The alleged wrongful conduct was Circus Circus security guards' response to the plaintiff's conduct in the employee dining room. Factually, what was their response? Their response? Well, there's a dispute on that. Okay. There's a dispute on that for the trier factor result. The security guards' version is in the record, some of their deposition excerpts. They approached Mr. Altamont Williams, who was standing on a chair, leading chants, no contract, no work, things of that nature, asked him to get down. As they approached, the housekeepers locked arms, and they wouldn't allow the security guards to get Mr. Williams, and the disturbance was increasing. The security guards directed the employees to leave the employee dining room. Some of them did. Some of them didn't. The plaintiffs here resisted the security guards trying to restore order by escorting Mr. Williams out. Now, of course, the housekeepers, the plaintiffs, and Mr. Williams describe in more graphic detail and in their allegations in the claim about stormtrooper tactics. At some point, you know, a trier factor will have to decide what happened there and whether the big issue here is that is it a jury or a judge in State court or is it the arbitrator under the Labor Management Relations Act? And what has been the case? What is the allegation of a breach of the CBA? I mean, there's nothing in the CBA that covers dealing with obstreperous conduct, is there? Yes, Your Honor. There is. And we've cited it. We've summarized them in footnote 25 of our brief at page 32. Article 4, section 401, communications with employees about for union business. Article 4, section 402, establishing additional standards for conduct for union stewards. Article 23, section 2301, employer's right to manage. Article 23, section 402. Employer's right to manage what? Manage the workplace, to manage the work. And these – some of these plaintiffs were working. Some of them were – had come in for the meeting. I mean, some of them were working and on their lunch break. The collective bargaining agreement provides in one section – I'd have to find it – that when they're on break, they're still on employer's time, you know, even though they're – How are you going to use – describe for us how would you use the CBA to justify what the guards did. Right. Well, the question is going to be did the guards respond reasonably to the situation. They have an obligation to maintain order, and the employer has a right to maintain order in the workplace and on the property. Now, if the guards went in there swinging billy clubs and spraying mace, that would, you know, not be appropriate. You would argue that the CBA just allows guards to go in and beat people to death. Oh, certainly not, Your Honor. Certainly not. Your factual scenario is all they were trying to do was to keep the order to which they're entitled and to manage in the manner in which they're entitled under the CBA. That's not my factual scenario. That would be our defense to the case. Right. I mean, the facts are, I think, agreed, what I said were already agreed to. There is a dispute about how much force was used and was it reasonable. Now, you know, much has been said here about was there a criminal case here. I mean, there's nothing in the record that, you know, the police recommended this case for prosecution or anything happened like that. The police's response, just as we believe it should be in a civil law, is this was a union matter, and this was employees pushing about a union contract, and this was the employer responding, and whether they responded reasonably or not should be governed by the collective bargaining agreement. Additionally, Your Honor, there were plaintiffs who filed grievances in this case, and certain adjustments were made. We quoted in the record certain sections, and I can, if I could, if you could see I believe it begins at 76. There's exchange of letters between Jim Arnold, the Secretary-Treasurer of the union, and Ms. Turner, who's the Corporate Director of Human Services, addressing, you know, this incident and what happened. There's a grievance control sheet. There's a grievance fact sheet. And it goes on from Ms. Ward also, who filed a grievance, and correspondence back and forth. And then, most importantly, at 87 in the record, Ms. Turner wrote to Mr. Wilhelm, during the recent Circus Circus Las Vegas Joint Executive Board collective bargaining session, you stated that resolution of grievances involving Al Williams, that was the man who was leading the chanting, Cathy Ward, and Maria Paniagua, those are two plaintiffs here, was critical to the successful completion of our negotiations. Therefore, please be advised that in the spirit of cooperation, without admitting an improper conduct or establishing precedent, Circus Circus shall withdraw and declare void the disciplinary notices of suspension issued to Mr. Williams on May 14th, 2002, and the written warnings issued to Ms. Ward and Ms. Paniagua on May 14th, 2002, and provide Mr. Williams with back pay for his period of suspension. We trust this will resolve the grievances and pave the way for a successful completion of the collective bargaining. Have you read the Galvez case? Your Honor, I'm sorry, I haven't. I asked, did some research to see if there were any new cases that applied, and I didn't find it. Galvez isn't a new case. The other side didn't cite it, so I guess I might understand why you're not. We might have missed it, Your Honor, and if it's a controlling case, I certainly apologize. It talks about assaults and batteries and to what extent they are preempted by the Labor Management Relation Act. Could I have a cite to that, Your Honor, if that's appropriate? You're going to use the CBA as part of your defense in this case, no matter when it comes to push and shove. Is that what you're telling us? Well, Your Honor, I think, yes, I think that's appropriate that this case, in order to, and jumping back maybe to the cases we think are controlling or the Supreme Court precedent of Alice Chalmers v. Luke, which I'm sure you're familiar with, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability and tort, questions relating to the parties to a labor agreement agree to what the legal consequences were intended to flow from the breaches of that agreement must be resolved by reference to the uniform Federal law where such questions arise in the context of, as I said. And then, of course, there's the Lingle case, which is the other Supreme Court case, which goes the other way, Justice Stevens's case, where he, I believe that one was a retaliatory discharge case for workers' compensation claim, I believe. It was something on the fringe. It wasn't something, you know, happening in the workplace that caused an immediate response or immediate attention by someone. And he said a rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of Federal labor contract law under Section 301, that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance. So am I correct in saying you're going to be arguing or your side is going to be arguing that what your guards did was justified under the CBA? Absolutely, Your Honor. And we also worked into our argument the trespass statute under Nevada, which allows if there's a disruption on our property in a hotel. I don't know. Excuse me. That's NRS 65.020, eviction of disorderly persons. I have a copy of it if you're. Eviction of disorderly persons. Every owner or keeper of a hotel, inn, motel, motor court or boarding house or lodging house in this State shall have the right to evict from such premises anyone who acts in a disorderly manner and then some other things. I mean, so the question is, were they acting in a disorderly manner? The collective bargaining agreement, which then incorporates our rules we adopted in our handbook, which we referred to, refusal or failure to follow instructions. The security guards. Their citation, most of the plaintiffs, I think all the plaintiffs were deposed and most of them agreed that the security guard's approach, ask people to leave, you know, tried to calm down and diffuse the situation. And our Rule 4 says refusal to fail or failure to follow instructions is a violation of your obligations as an employee, disregard or violation of rules, policy or procedures, causing a disturbance on the premises, interfering with the conduct of other employees and doing their job. All of these things were going on. This was a matter that had to do with contract negotiations, whether it was an organized union event, which, you know, has been disputed, and I'm sure you're aware of that in the record, or whether it's just something that happened that Mr. Williams walked in and 200 housekeepers happened to be there and they all started chanting spontaneously. It was my client's right as the employer to control his workplace, take reasonable steps to protect what was going on in there. It has nothing to do with a crime or assault and battery. There may be a tort alleged, but the reach of 301, complete preemption, is allows this Federal court to make a body of Federal labor law to give guidance on how to appropriately handle these situations. Okay. Counsel, the citation to Galvis v. Kuhn, if you could mark it down, is 933, Fed 2nd, 973, and that's a 1991 case from this Court. The Court has determined that both sides will have 10 days within which to respond or to comment on the applicability of the Galvis case to the issues in this case. Thank you, Your Honor. We'll certainly do that. And we'll publish an order of that effect. Anything further? Well, yes. I would like to go back to the remand question, Your Honor, because I've got to tell you, if I can find my notes. I brought it up here with me. And spend some time working Galvis down through the cases. There may be some other things like Milne and things like that. Yes, Your Honor. We'll certainly do that. Thank you. Mr. Kramer. Aye. Okay. There's two issues here. There's whether there's subject matter jurisdiction over this case and then whether it would have been appropriate for Judge Proudt to remand. Now, under the remand. It was already determined that this was a Federal appropriate. Pardon me? He had he decided in the merits or at least on the jurisdictional issue that it was under the CBA. Therefore, obviously, you had jurisdiction. Right. In a summary judgment, of course, Your Honor. Right. But I'm trying to jump back because I was thinking about this, you know, when I realized we were going to be arguing. There's been no appeal of the remand, right? Yeah. But if there's no jurisdiction, it has to go back, doesn't it? That's right. So then I just want to be clear. Then the issue of subject matter jurisdiction. And I would refer the Court to Caterpillar v. Lewis. Let's see. A district court's failure to remand a case improperly removed is not fatal to an ensuing adjudication if Federal jurisdiction requirements are met at the time the judgment is entered. So, you know, our position is that, you know, there is jurisdiction here today. And if there was anything wrong with the remand other than strictly a jurisdictional determination. Our jurisdiction is an appellate jurisdiction, and that was their final judgment and so on. Right. That clearly has been met. It's not a subject matter problem. It's the issue in the case. But the jurisdiction to decide the issue is certainly here and would be here in the Supreme Court. That's correct, Your Honor. But my point is that I think the remedy, the appropriate remedy, since there was no appeal of the remand, and there is subject, I believe, subject matter jurisdiction, that if the Court determines that there's some error, that it should be remanded to the Federal court for further proceedings, there should not be a direction that it remanded from you to the Federal court. There shouldn't be a direction that it should be remanded to the State court, because I believe it's appropriate. Thank you, counsel. Mr. Peres, anything further? Thank you, Your Honor. Counsel is correct. There are several facts in dispute as to the reasonableness of the conduct. Certainly we believe that the women that were the plaintiff, or the petitioners in this case, were beaten up, abused by the tactics of the employer. The Nevada statute that was pointed out by counsel, the rest of that statute says that it must be reasonable force to remove anybody from the hotel. The way you see the facts, was your side clubbed? Yes. Knees to the back, broken arms, people taken to the hospital. I don't see any of that in the record. I believe it's in the record. There's deposition testimony that is attached to the record. Their side is, we simply were breaking up a disruption of our workplace, and they would be entitled to use the CBA to justify that. Is that not right? That would be correct. However, the reasonableness of the methods for breaking up this meeting is in question and outside of the CBA. Doesn't the CBA come into play in the resolution of this case? If their facts are accepted by a fact finder, then the overlay for justification is the CBA. Sure, we laid hands on. Sure, we dragged people out of there. That's technically a battery when you touch somebody. But if there's a lawful justification for the touching, it no longer becomes a battery. And so their position, is it not, is that this was perfectly appropriate because we were breaking up something that the CBA allowed us to break up and was prohibited by it. Yes, Your Honor. However, in this case, Nevada law states that it must be reasonable. The facts here make this an independent. I agree with that. That's the end point. But, I mean, I think you're admitting that the CBA becomes intimately involved in the resolution of this issue. I don't agree, Your Honor, simply because the reasonableness of it cannot be dictated by the CBA. Certainly. That's right. You're saying the end result. But the point is the CBA is what's going to be at play here. They're going to be arguing the CBA. Certainly, even the ---- Will you be able to stop them from arguing the CPA in justification? The basis of our argument would be that even as a public policy issue, getting kneed in the back and breaking arms is not reasonable. But in the trial, would you be able to successfully object to the introduction of the CBA into this? I believe the CBA is not the controlling document, simply because it does not discuss. Except there are facts it might be. Well, certainly, Your Honor, if you look at the CBA, Section 2101, which is their requirement of the arbitration of any matters between employees and employers, the CBA defines a grievance as a dispute or difference of opinion between the union and employers involving meanings, interpretation, and application of employees covered by the agreement. This is not a disagreement of opinion. This is a tort. This is a violation of their civil rights. The point is, you say it's a tort. They say it was not, because they say your facts aren't going to wash with a fact finder. Ours are. Ours are. And when ours do, then the CBA provides the justification for what we did in our workplace. And certainly those facts are in dispute. Our clients will say that there was no. Okay. Okay. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: Beezer, O'scannlain, Trott